CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 2 8 2015

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

|  |  |  |
|---|---|---|
| KEVIN SNODGRASS, JR., | ) | CASE NO. 7:15CV00075 |
|  | ) |  |
| Plaintiff, | ) |  |
| v. | ) | **MEMORANDUM OPINION** |
|  | ) |  |
|  | ) |  |
| STACY L. DAY, ET AL., | ) | By: Hon. Glen E. Conrad |
|  | ) | Chief United States District Judge |
| Defendants. | ) |  |

Kevin Snodgrass, Jr., a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. In his amended complaint, Snodgrass alleges that officials at Red Onion State Prison conspired to retaliate against him by committing, or failing to correct, procedural errors related to an increase in his security classification and his assignment to long-term segregation. Upon review of the record, the court summarily dismisses this action without prejudice as frivolous.

## I

Snodgrass alleges the following sequence of events. On December 6, 2013, Snodgrass was housed on prehearing detention status in B-3 pod, awaiting a disciplinary hearing. The next day, well before the hearing, Snodgrass was moved to C-Building and reclassified as Level S, also known as long-term segregation.[1] Officers reportedly conducted an Institutional Classification Authority ("ICA") hearing on December 9, 2013. Snodgrass stated that he should not be in segregation, but the ICA recommended an increase in his security classification to Level S. Warden Mathena approved the change, even before Snodgrass was found guilty of the disciplinary charge.

---

[1] Snodgrass alleges that when the disciplinary hearing occurred on December 16, 2014, he received inadequate assistance from his staff advisor and was denied the right to present documentary and testimonial evidence that he had requested. Nevertheless, he was found guilty, and that finding was upheld on appeal.

Officers next conducted an ICA review with Snodgrass on February 28, 2014, and recommended another housing reassignment for him, allegedly without making appropriate reference to required criteria listed in the applicable prison operating procedure. An administrator approved the ICA recommendation, and on May 21, 2014, Snodgrass was relocated to C-Building cell 605. He was told that before he could be released from this segregation status, he would have to complete Books 6 and 7 of the Challenge Series. More than a hundred days passed, however, before Snodgrass and other offenders in the unit were provided with the required books.

In August 2014, another inmate informed Snodgrass that officials' failure to provide a segregation inmate with an ICA review every ninety days was a due process violation. Two officers also allegedly told Snodgrass that if he had not had an ICA review within ninety days, he would be released to the general population as soon as bed space was available. Instead, Lt. Day conducted an ICA hearing on August 18, 2014, found no procedural violation, and stated that Snodgrass would remain in segregation until he completed the required books. Snodgrass alleges that Day again failed to support this decision with reference to the criteria listed in the applicable regulation.

Later in August 2014, the amount of money Snodgrass was allowed to spend on commissary items was cut in half without notice. When he inquired, Snodgrass was told that the commissary restriction was based on another change in his segregation status — from SM-2 to SM-1. Day allegedly told Snodgrass that his status had been changed because he continued to file grievances about his housing assignment. Snodgrass alleges that several other officials violated procedure in responding to his grievances about his segregation status or failed to correct such errors. Snodgrass seeks monetary damages, declaratory, and injunctive relief

2

related to defendants' alleged conspiracy to increase his security classification without due process and to retaliate against him for filing grievances.

## II

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). In this context, the court may dismiss as frivolous a claim based on "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. See Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013).

To prevail on a procedural due process claim, such as Snodgrass' apparent claim in this action, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or "will inevitably affect the duration" of his confinement. Sandin v. Conner, 515 U.S. 472, 484, 487 (1995).

An inmate's assignment to administrative segregation such as Snodgrass has experienced does not exceed the sentence imposed on him in such an extreme way as to give rise to the

3

protection of the Due Process Clause by its own force. Id. at 485. Moreover, mere limitations on privileges, property, and activities for administratively segregated inmates do not constitute "atypical and significant" hardship in relation to the ordinary incidents of prison life as required to create a liberty interest, triggering federal due process protection. Id.; Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997) (holding that administrative segregation for six months in cells with vermin, human waste, flooding toilet, excessive heat; and dirty clothing, linens, and bedding; with longer periods in cell and no outside recreation; with no educational or religious services; and with cold food in smaller portions was not so atypical as to impose significant hardship as required for liberty interest under Sandin analysis). Allegations that prison officials violated state prison procedures by changing plaintiff's housing assignment do not amount to a constitutional violation actionable under § 1983. Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that where state law grants more procedural rights than the Constitution requires, state official's violation of state procedure is not a federal due process issue).

The court cannot find that Snodgrass' allegations state any claim that the increases in his security classification deprived him of any federally protected liberty interest. Snodgrass fails to state facts showing that living conditions in his current security status, as compared with general population conditions, activities, and privileges, are so atypical as to impose any significant hardship on him. He also fails to show that these status changes will inevitably lengthen his term of confinement. Therefore, the court cannot find that Snodgrass had any federal due process right to notice or a hearing related to the status changes of which he complains. Even taking as true his allegation that prison regulations required additional procedural protections preceding such status changes, these alleged violations of state procedural rules do not provide grounds for

4

any federal due process claim actionable under § 1983. For these reasons, the court will summarily dismiss as frivolous Snodgrass' claim that his reclassifications violated federal due process rights.

The court also finds no factual basis for a retaliation claim actionable under § 1983. Prison officials may not retaliate against an inmate for exercising his constitutional right. See, e.g., Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). On the other hand, to state a § 1983 claim here, Snodgrass must allege facts showing that his exercise of a constitutional right was a substantial factor motivating the alleged retaliatory action. See, e.g., Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993) (citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977) (requiring plaintiff to show "a causal relationship between the protected expression and the retaliatory action").

Snodgrass alleges that officials increased his security classification because he filed grievances about prior status changes. Inmates do not have a constitutionally protected right to a grievance procedure, however. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Thus, Snodgrass was not exercising a constitutionally protected right when he filed grievances,[2] and therefore, a status change allegedly based on that activity did not give rise to any § 1983 claim of retaliation.[3]

---

[2] For this reason, Snodgrass also cannot prevail on any separate § 1983 claim based on his allegations related to defendants' alleged errors regarding the grievance procedure. Because such errors have no constitutional implications, they are not actionable under § 1983. Adams, 40 F.3d at 75.

[3] Because Snodgrass' allegations provide no factual basis for any claim that defendants' actions violated his constitutional rights, his conclusory claim of conspiracy also fails. See also Brown v. Angelone, 938 F.Supp. 340, 346 (W.D. Va. 1996) (finding that where allegations of conspiracy are merely conclusory, without facts showing common purpose to injure plaintiff, complaint may be summarily dismissed).

5

For the stated reasons, the court will summarily dismiss these claims under § 1915A(b)(1) without prejudice, as frivolous. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This _28th_ day of April, 2015.

Chief United States District Judge